ALLEN *v.* NEWTON OIL MILL *et al.*

(Division B.   Feb. 15, 1932.)

[139 So. 846.   No. 29723.]

J. H. Ford, of Houston, for appellant.

862

May, Sanders, McLaurin & Byrd, of Jackson, for appellees.

**Ethridge, P. J.**, delivered the opinion of the court.

On June 1, 1929, the appellant, Allen, filed a bill in the chancery court of Chickasaw county, alleging that on August 1, 1925, he and the Newton Oil Mill entered into a contract whereby said Newton Oil Mill was to furnish him money for the purpose of buying cotton seed at the customary price to be shipped to the oil mill as directed from time to time, and as compensation for such services the appellant, Allen, was to receive three dollars for each ton of seed so shipped by him until the final maturity of five promissory notes, for one thousand three hundred twelve dollars and twenty-three cents each, given by him to said Newton Oil Mill, said contract reading as follows:

"The terms of this agreement between the Newton Oil Mill of Newton, Mississippi, and Mr. J. H. Allen, Houston, Mississippi, are such that the said J. H. Allen is to

buy cotton seed for the said Newton Oil Mill at Houston, Mississippi, upon the following conditions: The said J. H. Allen agrees to buy cotton seed for the said Newton Oil Mill exclusively and for no one else during the continuance of this contract. The price of seed shall be fixed ,by said Newton Oil Mill from time to time and the said J. H. Allen agree and bind themselves to use every possible effort to purchase all the seed obtainable and to pay such prices as are authorized by said Mill and to ship out seed bought when and as directed by said Mill. When the said Newton Oil Mill shall furnish the said J. H. Allen any money or merchandise for the purchase of cotton seed the same shall remain the property of the said Mill and the said J. H. Allen shall hold the same in trust as its agent and it shall be subject to the order and demands of the said Mill at all times and it shall be kept separate and apart from any other fund or merchandise and daily report of its expenditures shall be made on blanks furnished by said Mill. And said J. H. Allen agrees to return any balance due said Mill as shown by account whenever called on by said Mill. The said Newton Oil Mill agrees to furnish the said J. H. Allen sufficient funds or merchandise as in their judgment is necessary for the purchase of seed and as compensation for services rendered to pay said J. H. Allen on all seed bought and delivered a commission of three dollars per ton loaded on cars. Settlements to be based on mill weights with allowance for normal loss which is not to exceed one and one-half per cent. This contract shall remain in force from April 8th, 1925 to April 8th, 1929. Signed in duplicate this the 8th day of April, 1925.''

As stated by this contract, Allen was to buy seed for no other person except the Newton Oil Mill. He gave a deed of trust upon certain property to secure the said five promissory notes mentioned above. Prior to making this deed of trust, the appellant, Allen, purchased from a gin company a ginning outfit, giving notes therefor in

which the title was reserved, and, when the first of these notes became due, Allen was in need of financial assistance, so he arranged with the Newton Oil Mill by which it took an assignment from the gin company of the purchase-money notes reserving title to the machinery; and a deed of trust was given to the Newton Oil Mill to secure said notes so assigned and transferred by the gin company to the oil mill, and to secure advances from the oil mill to the appellant, J. H. Allen. One of the notes was paid by the appellant and the others were outstanding. The appellant, Allen, purchased and shipped cotton seed under the contract above set forth to the Newton Oil Mill for several years, the price to be paid for the seed to be advanced to the appellant by the oil mill, and he was to be credited with the seed shipped to the mill under the terms of the contract. Default having been made in the payment of the notes so secured, the trustee in the deed of trust, on the request of the Newton Oil Mill, advertised the property for sale, and a bill for injunction was filed to restrain said sale, and, pending the litigation, a receiver was appointed for the operation of said ginning outfit.

The chief contention of the appellant was that he was to be paid for said seed according to weights at the gin where the seed were purchased and not at the mill to which the seed were shipped.

It appears that the Newton Oil Mill annually made up and submitted to the appellant, Allen, statements of the account, showing the amount of seed received at the mill, the weights, and the amounts furnished in money and merchandise to the appellant for the operation of the gin plant and the purchase of seed.

The chancellor appointed a master to take and state the accounts concerning the matters at issue, and the master filed a report stating the amounts of indebtedness due by the appellant to the Newton Oil Mill, and a finding that the settlements were to be according to the weights at the

Newton Oil Mill's place of business to which the seed were shipped. There was testimony to the effect that seed will lose weight due to drying out in handling and shipping; and there was considerable discrepancy between the weights at the gin plant at the time they were bought, and the weights at the Newton Oil Mill's plant at Newton, Mississippi.

The chancellor held that, under the contract, the settlements were to be made upon the weights at the Newton Oil Mill, and to be based on mill weights at the oil mill, and not the weights at the gin plant. We think this is a correct construction of the contract above set out. The statement of account above from year to year showed that the Newton Oil Mill was marking upon these statements an allowance of one and one-half per cent. loss. There was, therefore, no error in the construction of the contract.

When the deed of trust was given, it was not acknowledged, and, according to the appellant's contention, it was not witnessed by Lowe, who executed it on the part of the Newton Oil Mill, and was not to be placed of record, for the reason given by the appellant that placing it of record would injure the business of both the appellant and the oil mill unfavorably.

According to the testimony of the appellees, the contract was witnessed by Lowe, and he also testified that Allen had agreed to acknowledge the deed of trust, and that it was agreed between them that it would be held off for one season only. After the expiration of one year, Allen was requested to acknowledge the deed of trust, but this he failed or refused to do. The witness, Lowe, thereupon went to a notary public, and made affidavit that the contract was executed by Allen and witnessed by Lowe in the presence of blank, the blank space not being filled in. The contract was thereupon put of record.

It is contended by the appellant that this constituted a material alteration of the contract and avoided it. The

court held it was not a material alteration, and that, as between the parties, the contract was not affected by the acknowledgment and recordation. We think the court was correct in so holding. The contract was good as between the parties, whether witnessed or acknowledged, or not. Witnessing and acknowledging such a contract is only required for the purpose of recording. Obligations of the parties as between each other are in no wise affected by the signing of Lowe's name as a witness, conceding, for the purpose of this decision, that this was done after the execution and delivery of the contract and was not authorized by Allen.

However, the chancellor had the evidence before him, and he was warranted by such evidence in finding, according to the testimony of the appellee, that Allen had agreed to acknowledge the deed of trust, and that it was actually witnessed by Lowe. At the time of the execution of the contract, there was no question of third parties involved in this suit, and the recording of the contract, whether authorized or not, in no wise affects the rights of the parties to this suit.

It may be that, if the appellant was injured by breach of the agreement, he might have some right of action in damages for such breach, if he could show such damages; but that question is not involved here, and we express no opinion thereon.

It is our view that the contract between the parties was not affected by its being witnessed and recorded with the affidavit made by Lowe as subscribing witness.

There are disputes between the appellant and the appellees about the various items and the facts involved in the accounting. We have considered these disputes and think it was the function of the master and the chancellor to settle the issues of fact.

We are unable to see that the findings of the chancellor and the master were not authorized by the testimony. Consequently, we find no reversible error in the judgment of the court below, and the judgment will be affirmed.

Affirmed.